## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| CARI TREER | : | |
| 314 Astor Ct. | : | |
| Downingtown, PA 19335 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. _____ |
| v. | : | |
| | : | |
| BEST LINE LEASING, INC. | : | |
| d/b/a Best Line Equipment | : | |
| 515 South Bolmar St. | : | **JURY TRIAL DEMANDED** |
| West Chester, PA 19382 | : | |
| | : | |
| Defendant. | : | |

_____:

### CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     This action has been initiated by Cari Treer (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Best Line Leasing, Inc. d/b/a Best Line Equipment (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA"). [1]   As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

_____

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA.  Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      There lies supplemental jurisdiction over Plaintiff's future state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Defendant is a privately held company that provides contractor-grade construction equipment to a wide array of customers through its 13 locations in Pennsylvania.

8.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff was employed with Defendant at its West Chester, Pennsylvania location for approximately four (4) years as a Rental Coordinator.

11.     Plaintiff was offered employment with Defendant in May of 2016 and her first day of work was on June 6, 2016.

12.     Plaintiff has and continues to suffer from disabilities related to her knee and back resulting from two different vehicle accidents.

13.     Plaintiff's first vehicle accident occurred on January 8, 2016, before she was hired to work for Defendant. As a result of this accident, Plaintiff sustained serious injuries to her knee and back.

14.     Plaintiff's other accident occurred in December of 2016, which aggravated Plaintiff's aforesaid physical conditions from the first accident (discussed *supra*).

15.     Plaintiff's disabilities related to her knee and back, at times, limit her ability to engage in some daily life activities, including but not limited to lifting, pushing, pulling, climbing, twisting, bending, working and performing manual tasks.

16.     At the time of her hire, Defendant's management knew of Plaintiff's health conditions and limitations.

17.     In fact, Plaintiff specifically informed Defendant's management at the time of her hire that she would not be able to perform certain duties assigned to a Rental Coordinator – such as loading and unloading customer equipment and operating equipment.

18.     Despite her aforesaid physical limitations, Defendant's management assured Plaintiff that if she got a doctor's note indicating that she was cleared to work as a Rental Coordinator then Defendant would work with her disabilities and limitations.

19.     Plaintiff did as requested and obtained the aforesaid note clearing her to work as a Rental Coordinator.

20.     Plaintiff thereafter started working for Defendant with full disclosure of her health conditions and limitations. In fact, Plaintiff was hired while on crutches and started employment wearing a knee brace.

21.     Since she was first hired with Defendant until in on or about June of 2020 (approximately 4 years), Plaintiff continued to work as a Rental Coordinator without any issues, even with her limitations and restrictions.

22.     Despite Plaintiff's job description indicating otherwise, Defendant's management never required that she load or unload customer equipment during her approximate four-year tenure with Defendant (rather they would have another employee assist her with this duty).[2]

23.     Furthermore, the only equipment that Plaintiff operated while employed with Defendant was a Bobcat small walk behind track machine (and she spent minimal time on other equipment solely for training purposes).

---

[2] In fact, at the time Plaintiff was hired, Defendant had a yard guy who was responsible for loading and unloading customer equipment.

24.     The reason Plaintiff was able to operate the Bobcat small walk behind track machine with her disabilities (and not other equipment) was because she could walk behind the machine and there was a turtle mode, which allowed her to move the machine without having to lift, climb, twist, bend or physically exert herself.

25.     However, the extent to which Plaintiff would operate the Bobcat small walk behind track machine was moving it into the yard and retrieving it for customers. Plaintiff did not [1] add or remove any attachments to or from this machine; [2] use the machine to load any customers; or [3] walk the machine onto any trailers.

26.     While Plaintiff was directly and indirectly supervised by various individuals throughout her employment with Defendant, her health conditions continued to be accommodated (in the sense that she was not required to unload or load customers, operate heavy equipment, or do any tasks which fell outside of her restrictions).

27.     In addition to the aforesaid accommodations, Plaintiff also took various days off from work related to her health conditions (FMLA-qualifying leave), including but not limited to for the purposes of undergoing various procedures – which Defendant's management was also kept apprised of.

28.     In or about March of 2020, Plaintiff opted to go on voluntary furlough and remained on furlough until May 31, 2020.

29.     When Plaintiff returned to work from furlough on June 1, 2020, she was placed under a new manager because the manager she had been working with prior to March of 2020 was still out of work on furlough.

30.     When Plaintiff came under the supervision of this new manager upon her return to work in June of 2020, he started asking her to do things that she was not physically able to do

5

because of her aforementioned health conditions (and things that she had never been required to do during her employment previously).

31.     As a result of Plaintiff's new supervisor assigning her to tasks which fell outside of her physical limitations (discussed *supra*), Plaintiff spoke with Andy Wells (Regional Manager – Eastern Operations, hereinafter "Wells") and Lucy Maney (Director of Human Resources, hereinafter "Maney") on or about June 10, 2020 regarding her disabilities and limitations.

32.     Specifically, on or about June 10, 2020, during her meeting with Maney and Wells, Plaintiff asked whether Human Resources ("HR") had anything on file regarding her health conditions and limitations. Plaintiff expressed that she had previously provided this information to her prior managers but with all the changes in management, she wanted to make sure HR had the necessary information as well.

33.     Maney responded to Plaintiff's inquiry (discussed in Paragraph 32 of the instant Complaint) by stating that she was not sure why it mattered because Plaintiff's prior manager would be returning to work in approximately one week.

34.     On or about June 10, 2020 (despite Maney's dismissal of Plaintiff's attempt to put her health conditions and limitations on record with HR), Plaintiff sent Maney a copy of her handicap place card and informed Maney that she would gather additional documentation regarding her health conditions and provide it to them shortly.

35.     Maney responded to Plaintiff's e-mail  on June 11, 2020 stating that she was not sure why Plaintiff provided her handicap place card but that if Plaintiff was in need of any accommodations, she would have to discuss it with her [Maney], Wells, or Mike Tackett (General Manager of Operations).

36.     On or about June 12, 2020, Plaintiff was notified by Wells via telephone that she would have one week to produce medical documentation regarding her disabilities and limitations. Plaintiff questioned what would happen if she was unable to get an appointment with her doctor during that time frame and was informed that she would be placed on unpaid leave.

37.     Following this conversation, Wells then sent a job description to Plaintiff so she could provide it to her physicians; however, the job description that Wells provided was different than the one provided to Plaintiff when she was first hired.

38.     Therefore, upon receipt of the aforesaid job description sent to her from Wells, Plaintiff  asked Wells which job description she needed to provide to her physicians (the one he sent her or the one she received upon hire), to which Wells responded that either one was fine.

39.     Later on June 12, 2020, Plaintiff called Wells and Maney to determine if there was a specific form she needed her doctors to complete (as it pertained to her disabilities) but was told by Maney that there was no form and that a letter from her doctor on letterhead would suffice.

40.     Therefore, on or about June 16, 2020, Plaintiff provided Defendant a doctor's note from the specialist she treats with for her back and on June 19, 2020, Plaintiff provided Defendant a doctor's note from her orthopedic doctor.

41.     Both doctor's notes (discussed *supra*) outlined Plaintiff's health conditions and limitations – which were the same health conditions and limitations she had successfully been performing her job with for years.

42.     On or about June 29, 2020, Plaintiff received a letter from Wells indicating that she was being placed on unpaid administrative leave and that her doctors now needed to answer specific questions regarding her disabilities. Wells' letter further stated that Plaintiff's health

conditions and limitations as outlined by her physicians in their June 16th and June 18th notes allegedly prevented her from performing the essential functions of her job.

43.     In addition to the foregoing, Wells stated in his June 29, 2020 letter that upon her return from furlough, Plaintiff was seen wearing a back brace and Defendant was questioning whether Plaintiff suffered an injury while she was out on furlough – which she had not.

44.     In fact, Plaintiff had worn a back brace on and off for the last 3.5 years of her employment with Defendant (specifically because of her aforesaid back condition).

45.     Plaintiff did as was instructed by Wells' June 29, 2020 letter and had both physicians answer the questions that were provided to her from Defendant and returned them to Defendant along with signed Authorization for Release of Information forms on or about July 7, 2020.

46.     Plaintiff thereafter asked Maney via email on July 7, 2020 to confirm receipt of her doctors' responses and reiterated to Maney:

> I feel it's important to note that in the four years I've worked at Best Line Equipment, accommodations have already been in place. I've never loaded or unloaded equipment. I can count on one hand the number of times I've climbed on/off equipment (which was for training). I've used the elevator to reach the second floor, instead of kneeling, I've always sat on the ground or floor. And when lifting, bending, twisting, reaching ect became restricted, I've limited these activities by asking management and coworkers for help . . . And last but not least, it wasn't until after I was already working at Best Line that I began treatments with a spine specialist with whom I've had multiples procedures, injections, surgeries, ect. I have provided doctors notes to my manager on duty each and every time. I've attached one of the many that was submitted. These restrictions were never lifted. But I've continued to successfully perform my job.

47.     Michael Getz (hereinafter "Getz"), Chief Operating Officer for Defendant, responded to Plaintiff's July 7, 2020 email on July 9, 2020 because Maney was out of the office.

In his e-mail, Getz accused Plaintiff of telling Maney and Wells that she was "totally disabled" which is completely false.

48.     Getz further stated in his July 9, 2020 email that Plaintiff would remain out of work until Defendant's management could speak to her doctor in order to determine if and when Plaintiff could return to work without restrictions.

49.     Plaintiff replied to Getz's aforementioned email on July 13, 2020 stating that she never said she was "totally disabled" and questioning how she could be on unpaid leave when "accommodations for these limitations have been in place for three and a half years."

50.     Plaintiff did not receive a response to the question posed in her July 13, 2020 email to Getz, but instead told Plaintiff via email later that day that he spoke with her doctor's office and Defendant's management was determining what action they were willing to take regarding her employment.

51.     On or about July 16, 2020 around 8:23 p.m., Plaintiff received a letter from Getz, dated July 15, 2020, which made numerous ***false*** allegations, including (1) Plaintiff had never been provided with accommodations like the ones that she was currently seeking by anyone in management since the beginning of her employment with the company; (2) the only medical documentation Plaintiff ever provided regarding her health conditions was a temporary restriction in 2017; (3) supervisors and managers had personally seen Plaintiff mounted on equipment between 2017 and the present; and (4) in June of 2020, Defendant first learned that Plaintiff had restrictions which would keep her from performing the essential functions of her job.

52.     Getz further indicated in his July 16, 2020 letter that Defendant could not accommodate Plaintiff's health conditions and limitations because they could not remove essential functions from her tasks and there were no other positions available for her.

53.     At the end of his July 16, 2020 letter, Getz informed Plaintiff that if she was unable to perform the essential functions of her job, "the company will have no choice but to terminate your employment" but that "[i]f your doctor determines that a short leave of absence may allow you to perform you essential functions, we will consider this information."

54.     Plaintiff was given until the next day to provide the aforesaid information (discussed in Paragraph 53 of the instant Complaint) or she would be considered to have abandoned her job with Defendant.

55.     Plaintiff responded to Getz's July 16, 2020 letter on July 17, 2020 stating that she was not abandoning her job but that her health conditions and limitations were permanent and a short leave of absence would not allow her to return to work without restrictions.

56.     Plaintiff further stated in her aforesaid response to Getz that based on his letter, she would assume she was terminated from Defendant unless she heard otherwise.

57.     Plaintiff never received a response from Getz or anyone else within Defendant to her July 17, 2020 email.

58.     Defendant therefore terminated Plaintiff's employment after 4 years, claiming that she was unable to perform the essential functions of her job and that Defendant was unable to accommodate her health conditions.

59.     However, for 3.5-4 years prior to her termination from Defendant, Plaintiff had been working with the same health conditions and limitations and had no issue performing her

job. Defendant's management had always accommodated Plaintiff without issue and it was not until June of 2020 that Plaintiff's health conditions or limitations became an alleged problem.

60.     Furthermore, following her termination, Defendant posted for Plaintiff's position and nowhere in the description under the heading "Essential Duties and Responsibilities" does it indicate that a "Rental Coordinator" would be required to move, lift, load, unload or operate equipment.

61.     Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of her actual/perceived/record of disability, in retaliation for requesting reasonable accommodations (including ones that had been given to Plaintiff for almost 4 years prior to her termination), and/or Defendant's refusal to engage in the interactive process and/or accommodate her health conditions.

## COUNT I
### Violations of the Americans with Disabilities Act "ADA"
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; & [4] Failure to Accommodate)**

62.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.     Plaintiff suffers from qualifying disabilities under the ADA which (at times) limit her ability to engage in daily life activities (discussed *supra*).

64.     As a result of her aforesaid health conditions and limitations, Plaintiff required accommodations to perform her job as a Rental Coordinator, including but not limited to, intermittent time off from work and assistance with loading/unloading equipment, lifting, pushing, pulling and performing other manual tasks.

65.     Plaintiff communicated her aforesaid need for medical accommodations with various managers throughout her employment with Defendant.

66.     In response, Plaintiff's disabilities were accommodated for the first 3.5-4 years of her employment and Plaintiff performed her role as Rental Coordinator without any issues.

67.     In June of 2020, in an attempt to get her health conditions and limitations on record with Defendant's HR department, Plaintiff was met with hostility and animosity, including but not limited to:

      i.   Having her attempts to document her disabilities and limitations with Defendant's HR department dismissed;

      ii.  Giving her one (1) week to submit a note from her doctor regarding her medical conditions and limitations (during the middle of a pandemic when doctor appointments are significantly limited);

     iii.  Treating her in a rude and demeaning manner and making false accusations about her communications with members of Defendant's management;

     iv.  Placing her on an unpaid leave of absence; and

     v.  Ultimately terminating her employment (and attempting to label said termination as "abandonment of job").

68.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, placed on unpaid leave, and ultimately terminated from her employment with Defendant because of [1] her actual and/or perceived disabilities; [2] her record of impairment; and [3] her requested accommodations, which constitutes unlawful retaliation.

69.     Plaintiff also believes and avers that she was placed on unpaid leave and terminated from her employment with Defendant as a result of Defendant's refusal to engage in the interactive process and/or accommodate her disabilities.

70.     These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

71.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

73.     Throughout her employment with Defendant, Plaintiff requested intermittent and/or block leave from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

74.     Plaintiff had at least 1,250 hours of service with the Defendant during the year prior to her requests for intermittent or block medical leave.

75.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

76.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of FMLA.

77.     Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) considering Plaintiff's FMLA needs in making the decision to terminate her; and/or (2) terminating her in retaliation for requesting and/or utilizing FMLA leave.

78.     These actions as aforesaid constitute both interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.      Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.


                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**


                        By:      */s/ Ari R. Karpf*
                                        Ari R. Karpf, Esq.
                                        Julia W. Clark, Esq.
                                        3331 Street Road
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801

Dated: February 2, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Cari Treer | : | CIVIL ACTION |
| v. | : | |
| Best Line Leasing, Inc., d/b/a Best Line Equipment | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X )

| 2/2/2021 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __314 Astor Ct., Downingtown, PA 19335__

Address of Defendant: __515 South Bolmar St., West Chester, PA 19382__

Place of Accident, Incident or Transaction: __Defendant's place of business__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?        Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?        Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?        Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?        Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __2/2/2021__     _____     __ARK2484 / 91538__
                      *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf__ , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __2/2/2021__     _____     __ARK2484 / 91538__
                      *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TREER, CARI

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

BEST LINE LEASING, INC. D/B/A BEST LINE EQUIPMENT

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |   |   |
|---|---|---|---|
| 1 | U.S. Government Plaintiff | X 3 | Federal Question *(U.S. Government Not a Party)* |
| 2 | U.S. Government Defendant | 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / Product Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine / 368 Asbestos Personal | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability / Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 370 Other Fraud | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury / 371 Truth in Lending | 720 Labor/Management Relations | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 380 Other Personal Property Damage | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | / 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 864 SSID Title XVI | 891 Agricultural Acts |
| | | | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 790 Other Labor Litigation | | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 896 Arbitration |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | X 445 Amer. w/Disabilities - Employment / 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** | 462 Naturalization Application | | |
| | 448 Education / 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | / 550 Civil Rights | | | |
| | / 555 Prison Condition | | | |
| | / 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| X 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation - Transfer | 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    X Yes    No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    2/2/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

| Print | Save As... | Reset |